# 24-162-cr

To be argued by:
**KENDRA L. HUTCHINSON**

**United States Court of Appeals
for the Second Circuit**

————————

Docket No. 24-162-cr

————————

UNITED STATES OF AMERICA,

Appellee,

-against-

KEITH VEREEN, a/k/a SEALED DEFENDANT 1,

Defendant,

STEVEN PEREZ, a/k/a SEALED DEFENDANT 2, a/k/a LUCHA,

Defendant-Appellant.

————————

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLANT STEVEN PEREZ**

Federal Defenders of New York, Inc.
Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8731

*Attorney for Defendant-Appellant*
**STEVEN PEREZ**

**KENDRA L. HUTCHINSON**,
*Of Counsel*

# TABLE OF CONTENTS

**TABLE OF CONTENTS**......................................................**i**

**TABLE OF AUTHORITIES** ..................................... **iii**

**STATEMENT OF JURISDICTION** ..................... **1**

**QUESTION PRESENTED**...................................**1**

**STATEMENT OF THE CASE** ............................ **2**

I.    Procedural Posture......................................... **2**

II.   Statement of Facts ........................................ **2**

    A.    The District Court's Denial Of The Defense Motion To Dismiss The Indictment Pursuant To *Bruen*. ....................... 2

    B.    The Trial............................................... 7

**SUMMARY OF ARGUMENT** ................................ **9**

**ARGUMENT** ....................................................... **10**

I.    Both Counts Of Conviction Should Be Vacated And The Charges Dismissed Because 18 U.S.C. § 922(A)(3), Which Prohibits Certain Individuals From Acquiring Out-Of-State Firearms, Violates The Second Amendment Right To Keep And Bear Arms.................. 10

    A.    Standard Of Review...................................... 11

    B.    *Bruen's* Framework For Deciding Second Amendment Challenges........................... 11

    C.    Section 922(a)(3) Infringes Upon Conduct Protected By the Second Amendment........................ 13

    D.    The Government Did Not Meet Its Burden To Prove A National Historical Tradition Of Prohibiting Interstate Transportation Or Receipt Of Firearms........................ 20

    E.    Section 922(a)(3) Violates the Second Amendment, Facially and As-Applied. ........................ 24

**CONCLUSION**.................................................**25**

**CERTIFICATE OF SERVICE**.............................................................. **26**

**CERTIFICATE OF COMPLIANCE**..................................................... **27**

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*,

-- F. Supp.3d --, 2023 WL 9546499 (W.D. Mich. Aug. 7, 2023)........... 16

*Andrews v. State*, 50 Tenn. 165 (1871 ..................................................... 14

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................... 5, 13, 14

*Ezell v. Chicago*, 651 F.3d 684 (7th Cir. 2011) ...................................... 14

*Jackson v. City & Cnty. of San Francisco*,

746 F.3d 953 (9th Cir. 2014) ............................................................. 13

*Luis v. United States*, 578 U.S. 5 (2016) ................................................ 13

*New York State Rifle & Pistol Association, Inc. v. Bruen*,

*597 U.S. 1 (2022)* ..........................................................................*passim*

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) ... 25

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017)............*passim*

*United States v. Adger*,

No. CR 122-102, 2023 WL 3229933 (S.D. Ga. May 3, 2023).............. 15

*United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) .............. 22, 23, 25

*United States v. DeCastro,* 682 F.3d 160 (2d Cir. 2012 ........... 3, 4, 17, 18

*United States v. Hicks*, 649 F. Supp. 3d 357 (W.D. Tex. 2023) .............. 16

*United States v. Holden*, 638 F. Supp.3d 931 (N.D. Ind. 2022) ............. 16

*United States v. Jimenez*, 895 F.3d 228 (2d Cir. 2018) .......................... 11

*United States v. Kelly*,

No. 3:22-cr-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022) .. 17

*United States v. Libertad*, 681 F. Supp. 3d 102 (S.D.N.Y. 2023) ............. 4

*United States v. Matteo*, 718 F.2d 340 (2d Cir. 1983)............................... 4

*United States v. Perez*, 6 F.4th 448 (2d Cir. 2021)................................. 11

*United States v. Quiroz,* 629 F. Supp. 3d 511 (W.D. Tex. 2022) ............ 17

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) .......................... 25

*United States v. Rogers,*

    No. 5:22-CR-717, 2024 WL 692701 (N.D. Ohio Feb. 20, 2024).......... 16

*United States v. Rowson*, 652 F. Supp. 3d 436 (S.D.N.Y. 2023) ............ 16

*United States v. Salerno*, 481 U.S. 739 (1987) ...................................... 25

*United States v. Schaffer*, 851 F.3d 166 (2d Cir. 2017) ........................ 11

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) .......................... 24

*United States v. Stambaugh*, 641 F. Supp. 3d 1185 (W.D. Okla. 2022)   16

## Statutes

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 371 ........................................................................................ 8

18 U.S.C. § 922(a)(3) ....................................................................*passim*

28 U.S.C. § 1291 ...................................................................................... 1

U.S.C. §§ 371 .................................................................................... 2, 8

## Constitutional Provisions

U.S. Const., amend. II........................................................................*passim*

## Other Authorities

*Acquire*, Merriam-Webster.com Thesaurus, https://www.merriam-

    webster.com/thesaurus/acquire........................................................... 15

*Receive,* Webster.com Dictionary, https://www.merriam-

    webster.com/dictionary/receive ......................................................... 15

## STATEMENT OF JURISDICTION

Steven Perez[1] appeals from a final judgment of conviction entered in the United States District Court for the Southern District of New York (Hon. Jed S. Rakoff) on January 12, 2024. 4A.1149-55.[2] A notice of appeal was timely filed on January 17, 2024. 4A.1156. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The District Court had jurisdiction under 18 U.S.C. § 3231.

## QUESTION PRESENTED

Should both counts of conviction be vacated and the charges dismissed because 18 U.S.C. § 922(a)(3), which prohibits certain individuals from acquiring out-of-state firearms, violates the Second Amendment right to keep and bear arms?

---

[1] Because of deeply-held spiritual convictions, Defendant-Appellant's preferred name is "Lucha El," and this was the name by which he was addressed and referred-to in the proceedings below, including before the jury. This brief adopts the district court's practice and refers to him as "Lucha El."

[2] Appendix volumes are cited by number followed by "A" (*e.g.*, Volume I is cited "1A"). The special appendix is cited "SPA."

1

## STATEMENT OF THE CASE

### I.  Procedural Posture

Lucha El was indicted in the Southern District of New York for one count each of interstate transport of firearms, 18 U.S.C. § 922(a)(3), and conspiracy to receive firearms from outside states of residency, 18 U.S.C. §§ 371. He was convicted of both counts following a jury trial. The district court (Hon. Jed S. Rakoff) sentenced Lucha El to 16 months' imprisonment, which he is currently serving, to be followed by three years of supervised release.

### II.  Statement of Facts

#### A. The District Court's Denial Of The Defense Motion To Dismiss The Indictment Pursuant To *Bruen*.

Lucha El moved pretrial to dismiss the indictment on the ground that 18 U.S.C. § 922(a)(3) violated his Second Amendment right to keep and bear arms, as set forth in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).[3] 1A.30-38. He alleged that he was part

_____

[3] An indictment charging 18 U.S.C. § 922(a)(3) was filed on November 30, 2022. 1A.21-22. The motion to dismiss was filed on February 4, 2023. 1A.27. The government filed a superseding indictment adding a count of conspiracy to commit 18 U.S.C. § 922(a)(3) on July 20, 2023. 1A.272-75.

of "the people" protected by the Second Amendment, 1A.34, that the conduct prohibited by §922(a)(3) was protected, 1A.34-35, and that there was no national historical tradition of prohibiting "regular citizens" from receiving and possessing out-of-state firearms. 1A.35-38. *See also* 1A.85-99 (defense reply); 1A.125-29 (defense supplemental letter brief). In the defense view, § 922(a)(3) was a statute that criminalized a person's possession and receipt under the Second Amendment, and did not implicate commercial sale. 1A.34, 90.

The government opposed, arguing that the conduct prohibited by § 922(a)(3) was not protected under the Second Amendment, mainly citing *United States v. DeCastro,* 682 F.3d 160 (2d Cir. 2012). 1A.67-72. The government characterized § 922(a)(3) as a "condition" on the "commercial sale of arms," *e.g.,* 1A.69, with the purpose of "preventing criminals from circumventing federal and state regulations on firearms purchases and firearms dealers." 1A.75. Given this characterization, the government also argued that there was a historical tradition of "relevantly similar" regulation, including: colonial laws prohibiting sale of firearms outside of the jurisdiction, which were mainly designed to prevent Native Americans from obtaining guns, 1A.72-73; and several

3

states' regulation of the sale, storage, and importation of gunpowder. 1A.73-74. *See also* 1A.21-24 (government's supplemental letter brief).

At oral argument, the parties reiterated their positions. 1A.100-20. The district court ultimately denied the motion, SPA.3, and later issued a written opinion explaining its decision. SPA.4-24. *See United States v. Libertad*, 681 F. Supp. 3d 102 (S.D.N.Y. 2023).

*First*, the district court characterized the "overall aim" of § 922(a)(3) as designed to "'funnel access to firearms almost exclusively through dealers' licensed and regulated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"),'" SPA.5 (quoting *United States v. Matteo*, 718 F.2d 340, 341 (2d Cir. 1983)), and as a statute that "place[s] certain threshold conditions on the acquisition of firearms designed to ensure that those carrying them are lawfully entitled to do so." SPA.12. It did not accept the defense view that § 922(a)(3) is a statute prohibiting possession and receipt. SPA.6.

*Second*, the court ruled that § 922(a)(3) does not abridge the right to keep and bear arms and, thus, does not regulate conduct covered by the Second Amendment. SPA.7-15. The court reasoned that it was bound by *DeCastro,* 682 F.3d at 165, in which this Court held that §

4

922(a)(3) only "minimally affects the ability to acquire a firearm," and thus was not subject to heightened scrutiny, under the means-end test that lower courts developed to analyze Second Amendment claims in the wake of *District of Columbia v. Heller*, 554 U.S. 570 (2008). This holding was the equivalent, "in *Bruen's* words," of a holding that "the regulated conduct implicated by § 922(a)(3) falls beyond the Second Amendment's original scope," such that "the analysis can stop there because the regulated activity is categorically unprotected." SPA.10 (quoting *Bruen*, 597 U.S. at 18; cleaned up).

The court found additional support for this conclusion in the *Bruen* majority opinion and Justice Kavanaugh's concurrence, both of which indicated approval of shall-issue firearm licensing schemes, without discussion of historical tradition. SPA.14. The "implication" of this was that licensing schemes, such as that carried out through § 922(a)(3), "do not even trigger a *Bruen* inquiry . . . because they do not on their face prevent anyone lawfully entitled to do so from 'keeping and bearing arms." *Id.*

*Third*, the district court ruled that § 922(a)(3) is "consistent with this country's history and tradition of firearm regulation" in light of the

two lines of founding-era regulations proffered by the government. SPA.18. Although acknowledging that "the historical analogy as to purpose is somewhat attenuated," that "the motivation for these laws may not have exactly paralleled" those of § 922(a)(3), and that "[n]either party has provided this Court with sufficient detail from the historical record to discern the purpose of these different laws," the court nevertheless believed they "demonstrate the expansive authority exercised by colonial and early state legislatures as well as early congresses over the transfer of firearms between individuals and across borders." SPA.22-23. This was sufficiently analogous to § 922(a)(3). SPA.23.

The court found additional support for this determination in laws not cited by the government or addressed by the parties, including a law passed by the Third Congress, which prohibited the export of weapons from the country, SPA.20-21; as well as "an extensive history in both England and the colonies of disarming those deemed dangerous and requiring large swathes of the citizenry to swear loyalty oaths in order to demonstrate they were not dangerous." SPA.23. What was notable about the latter laws, to the court, was that although the means of

6

regulation (the "how") was different (swearing an oath versus a prohibition on receiving out-of-state arms), it believed that the purpose (the "why") was the same, i.e. "enabling gunowners to verify they are not dangerous." SPA.24. In summary, the court ruled that § 922(a)(3) was "fully consistent with this country's history and tradition of gun regulation," "both with respect to the evident goal behind § 922(a)(3) (preventing firearms from getting into dangerous hands), and the chosen means (regulating the transfer of firearms across borders)." *Id.*

*Finally*, the court held that, even if § 922(a)(3) could be voided during an as-applied challenge in the future, Lucha El had not demonstrated its unconstitutionality as applied to him. SPA.17.

## B. The Trial.

Lucha El proceeded to trial before Judge Rakoff in August 2023. The government presented evidence that, in June 2021, Lucha El was arrested in the Bronx in possession of a handgun that had been lawfully purchased by co-defendant Keith Vereen in October 2020 in South Carolina. 2A.513-14, 523, 531, 571; 3A.577; 4A.886. Lucha El wired $350 to Vereen shortly before the purchase and did not have a federal firearms license (FFL). 2A.552, 559.

The government also presented evidence that Lucha El and several other people, who were residents of New York and Rhode Island, were arrested in Massachusetts in July 2021, in possession of nine firearms, one of which had been purchased by Vereen in South Carolina. 3A.763, 768-89. None of the people arrested had FFL licenses. 2A.559. There was evidence of cellular communications between Lucha El, Vereen, and other alleged co-conspirators around the times Vereen made several gun purchases and traveled from South Carolina to New York. 3A.654-751. There also was evidence of group chats between Massachusetts arrestees discussing firearms and firearms training, although Lucha El was not a participant. 4A.900-23.

Lucha El was found guilty of both 18 U.S.C. § 922(a)(3) and conspiracy to commit this offense, 18 U.S.C. § 371. 4A.1111. He was sentenced to 16 months imprisonment, to be followed by three years of supervised release. 4A.1111-48.

8

## SUMMARY OF ARGUMENT

The Second Amendment to the United States Constitution protects an individual's right to possess a handgun for self-defense, both in one's home and carried publicly. It also protects "ancillary rights necessary to the realization of the core right to possess a firearm for self-defense," including the right to acquire arms. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017).

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 34-37 (2022), the Supreme Court announced that, in order to justify any restriction on the fundamental rights conferred by the Second Amendment, the government must show it is "consistent with this Nation's historical tradition of firearm regulation." When a challenged regulation addresses a "general societal problem that has persisted since the 18th century," the court engages in a "straightforward historical analysis:" the government must show "a distinctly similar historical regulation addressing that problem." *Id.* at 26.

Here, the district court ruled that 18 U.S.C. § 922(a)(3) did not violate the Second Amendment, under the test set forth in *Bruen*. That

statute makes it unlawful for any person without a federal firearms license (FFL) to "transport into or receive in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that State." In other words, § 922(a)(3) prohibits an individual's acquisition and possession of out-of-state firearms. Because this conduct is covered by the Second Amendment, and because the government failed to prove a national historical tradition of firearm regulation "distinctly similar" to that of § 922(a)(3), the district court erred in ruling the statute – under which Lucha El was prosecuted and convicted – constitutional.

## ARGUMENT

I.  **Both Counts Of Conviction Should Be Vacated And The Charges Dismissed Because 18 U.S.C. § 922(A)(3), Which Prohibits Certain Individuals From Acquiring Out-Of-State Firearms, Violates The Second Amendment Right To Keep And Bear Arms.**

Lucha El was charged with 18 U.S.C. § 922(a)(3) and, ultimately, conspiring to commit this crime. He moved to dismiss on the ground that § 922(a)(3)'s prohibition of transportation or receipt of firearms obtained out-of-state violated the Second Amendment, under the newly-announced framework set forth in *Bruen*, 597 U.S. 1. The district court

10

denied the motion. In a lengthy opinion, the court reasoned that the statute did not infringe conduct covered by the Second Amendment, and that, in any event, the government had proved the statute was consistent with national historical tradition. Following a jury trial, Lucha El was convicted of both counts. Because the district court incorrectly held § 922(a)(3) was constitutional, vacatur of the judgment and dismissal of the charges is required.

## A. Standard Of Review.

This Court reviews *de novo* whether application of a law violates the constitution. *United States v. Schaffer*, 851 F.3d 166, 176-77 (2d Cir. 2017); *see United States v. Perez*, 6 F.4th 448, 451 (2d Cir. 2021) (reviewing Second Amendment challenge *de novo*); *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018) (same).

## B. *Bruen's* Framework For Deciding Second Amendment Challenges.

The Supreme Court has long recognized that the Second Amendment protects an individual's fundamental right to possess a firearm at home for self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 602 (2008); *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767-68 (2010) (plurality opinion). In *New York State Rifle & Pistol*

*Association, Inc. v. Bruen*, 597 U.S. 1, 9-10 (2022), the Court confirmed that the Second Amendment also protects the "right to carry handguns publicly," and articulated a new test for determining when governmental infringement on this right is constitutional: "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. To show that a law burdening this conduct is constitutional, "the government must demonstrate" that the law "is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Thus, to decide if a law abridging firearm possession is constitutional, a court must decide (1) whether the law covers conduct protected under the Second Amendment and (2) if the government has identified historical analogues sufficient to support that law. *Id.*

### C. Section 922(a)(3) Infringes Upon Conduct Protected By the Second Amendment.[4]

The Second Amendment guarantees that "the right of the people to keep and bear Arms[ ] shall not be infringed." U.S. Const. amend. II. Its "core protection" concerns "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. However, courts also have recognized that the Second Amendment "protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). *See Luis v. United States*, 578 U.S. 5, 26 (2016) ("Constitutional rights . . . implicitly protect those closely related acts necessary to their exercise.") (Thomas, J., concurring).

For example, the Second Amendment protects the right to obtain ammunition, as "without bullets, the right to bear arms would be meaningless." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014), *abrogated on other grounds*, *Bruen,* 597 U.S. at 19.

---

[4] The government did not dispute that Lucha El, an American citizen and resident of New York with no prior felony convictions, is among "the people" the Second Amendment protects, or that a handgun is the type of ordinary "arm" the Amendment covers. 1A.34-35.

13

The right to bear arms also implies "a corresponding right to . . . maintain proficiency in their use." *Ezell v. Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Heller*, 554 U.S. 617-18 (discussing implicit right to train with weapons). And, as is most relevant to the instant appeal, the Second Amendment also protects the right to acquire firearms, as "the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms." *Teixeira*, 873 F.3d at 677 (internal quotation omitted); *Ezell*, 651 F.3d at 704 (acquisition of arms encompassed by Second Amendment). *Cf. Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms.").

Here, Lucha El was convicted of violating 18 U.S.C. § 922(a)(3), which makes it unlawful for any person without an FFL license to "transport into or receive in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that State," as well as of conspiracy to commit the substantive offense. Part and parcel of obtaining firearms through their transportation and receipt is the

14

acquisition and possession of them. *See Receive,* Webster.com Dictionary, https://www.merriam-webster.com/dictionary/receive (last visited 5/3/2024) ("to come into possession of: acquire"); *Acquire*, Merriam-Webster.com Thesaurus, https://www.merriam-webster.com/thesaurus/acquire (last visited 5/3/2024) ("acquire" is synonym of "obtain"). Thus, the Second Amendment plainly covers the conduct regulated by § 922(a)(3). *See Teixeira*, 873 F.3d at 677; *Ezell*, 651 F.3d at 704. Indeed, at oral argument before Judge Rakoff, the government itself "acknowledge[d] that receipt is a necessary precursor to possession for [the] ability to keep and bear arms in certain instances." 1A.108.

Nor is this conclusion novel, or somehow unique to Lucha El's case. In the wake of *Bruen*, numerous district courts have held that transportation and receipt of firearms, as it is used within another subsection of § 922, subsection (n), is conduct within the ambit of the Second Amendment. *See United States v. Adger*, No. CR 122-102, 2023 WL 3229933, at *3 (S.D. Ga. May 3, 2023), *adopted by*, 2023 WL 3627840 (May 24, 2023) ("federal courts appear to agree the Second Amendment covers . . . the conduct of shipping, transporting, and

15

receiving firearms"; they "unanimously find that receiving a firearm is protected conduct under the Second Amendment"); *see also, e.g., United States v. Rogers,* No. 5:22-CR-717, 2024 WL 692701, at *6 (N.D. Ohio Feb. 20, 2024) ("shipping, transporting, or receiving a firearm . . . implicates the Second Amendment"); *Alexander v. United States*, -- F. Supp.3d --, 2023 WL 9546499, at *7 (W.D. Mich. Aug. 7, 2023) ("courts are generally in accord that . . . shipping, transporting, and receiving firearms [] is covered by the Second Amendment"); *United States v. Rowson*, 652 F. Supp. 3d 436, 459 (S.D.N.Y. 2023) ("shipping, receiving, or transporting a firearm" is "presumptively protected"); *United States v. Hicks*, 649 F. Supp. 3d 357, 360 (W.D. Tex. 2023) ("[r]eceipt is the condition precedent to possession - the latter is impossible without the former"); *United States v. Stambaugh*, 641 F. Supp. 3d 1185, 1190 (W.D. Okla. 2022), *reconsideration denied*, 650 F. Supp. 3d 1227 (2023) ("The United States does not dispute that the Second Amendment's plain text covers receiving a firearm—receipt is the condition precedent to keeping and bearing arms."); *United States v. Holden*, 638 F. Supp.3d 931, 936 (N.D. Ind. 2022), *rev'd on other grounds,* 70 F.4th 1015 (7th Cir. 2023) ("Receiving a firearm is necessarily a precursor to keeping or bearing a

16

firearm, so [defendant's] conduct is presumptively protected by the Second Amendment"); *United States v. Quiroz,* 629 F. Supp. 3d 511, 517 (W.D. Tex. 2022) ("The Second Amendment's plain text does cover 'receipt' and the Constitution presumptively protects such conduct."); *United States v. Kelly*, No. 3:22-cr-00037, 2022 WL 17336578, at *3 (M.D. Tenn. Nov. 16, 2022) (the act of receiving a firearm "is impossible to separate from the concept of 'bearing' a firearm").

The district court erred in ruling to the contrary. Broadly, its reasoning fits into two categories. *First*, the court ruled that it was bound by *United States v. DeCastro*, 682 F.3d 160, 169 (2d Cir. 2012), to hold that § 922(a)(3) does not infringe upon the Second Amendment at all. SPA.14. In *DeCastro*, a pre-*Bruen* case applying the now-abrogated means-end test, this Court held that "heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment. Because § 922(a)(3) only minimally affects the ability to acquire a firearm, it is not subject to any form of heightened scrutiny." 682 F.3d at 165. The district court reasoned that this holding of *DeCastro* was the functional equivalent of a holding, under *Bruen*,

17

that "the regulated activity is categorically unprotected" under the Second Amendment. SPA.10 (quoting *Bruen*, 597 U.S. at 18).

But *DeCastro* itself expressly declined to "decide whether certain firearm laws might regulate *conduct that is entirely unprotected* by the Second Amendment." *DeCastro*, 682 F.3d at 165 n.3 (emphasis added). This statement necessarily means that § 922(a)(3) – the statute at issue in the case – involves *protected* conduct. Moreover, just as the defense argued below, *Decastro*'s holding that § 922(a)(3)'s infringement on the Second Amendment is "minimal" nevertheless still acknowledges that the statue "affects the ability to acquire a firearm." *Id.* at 164; *see* 1A.127. Accordingly, even if it could be said that some aspects of *DeCastro* survive *Bruen*, that case did not bind the district court to conclude that § 922(a)(3)'s prohibited conduct is not covered by the Second Amendment. Indeed, *DeCastro* actually stands for the opposite proposition: that, even if characterized as "minimal" or "incidental," § 922(a)(3) does regulate "the ability to acquire a firearm," which is covered conduct under the Second Amendment. *Teixeira*, 873 F.3d at 677; *Ezell*, 651 F.3d at 704.

18

*Second*, the district court pointed to language in the *Bruen* majority opinion and Justice Kavanaugh's concurrence approving of "shall-issue" state firearm licensing schemes, under which a general desire for self-defense is sufficient to obtain a permit. In the court's opinion, this language "indicated the likely constitutionality of shall-issue [firearm licensing] regimes . . . *without* first conducting any exhaustive historical analysis," and reasoned that this suggested that regulations that required firearms licensing before possession, like § 922(a)(3) do not infringe on the right to keep and bear arms in the first place. SPA.14 (emphasis in original).

But this aspect of *Bruen* is *dicta*, unnecessary to the Court's result and not at issue in the case. Therefore, that the Court engaged in no historical analysis (*Bruen's* "step two") is unilluminating. Moreover, shall-issue and may-issue licensing schemes (in which the state has discretion to deny a permit) regulate the same conduct, firearm possession. *Bruen* held that the New York may-issue scheme at issue in that case involved covered conduct. There is no principled reason to conclude that the Court would come to a different conclusion in a shall-issue case, involving the exact same covered conduct. Indeed, the *Bruen*

19

Court did "not rule out constitutional challenges" to shall-issue schemes. 597 U.S. at 39 n.9.

It may be that the Supreme Court will uphold the constitutionality of shall-issue licensing schemes in a future case that fairly presents the issue. But forecasting that result, as the district court did here, does not mean that licensing schemes regulating firearm possession are categorically not covered by the Second Amendment, such that one does not even consult the nation's historical tradition in evaluating them. Indeed, *Bruen* belies this. Nor does such forecasting mean that criminal statutes like § 922(a)(3), prohibiting unlicensed interstate acquisition of a firearm, aren't subject to historical analysis, either.

In sum, the district court incorrectly held that the conduct prohibited by § 922(a)(3) is not covered under the Second Amendment.

### D. The Government Did Not Meet Its Burden To Prove A National Historical Tradition Of Prohibiting Interstate Transportation Or Receipt Of Firearms.

Since the conduct prohibited by § 922(a)(3) is covered by the Second Amendment, "the burden falls on" the government to "justify its regulation by demonstrating that it is consistent with the Nation's

historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24, 34.

Below, the government cited two types of colonial-era laws: (1) laws

prohibiting the sale or transfer of firearms to Native Americans; (2)

laws regulating gun powder storage, importation, exportation, and sale.

1A.72-74. While conceding "these statutes are not identical to Section

922(a)(3)," the government contended that "they are 'relevantly

similar,'" as "*Bruen* made clear that the government need only identify

a 'historical analogue, not a historical twin.'" 1A.74-75 (quoting *Bruen*,

597 U.S. at 29).

　　But the government's analysis is flawed. *Bruen* sets forth a dual-

track analytical framework. When a challenged regulation addresses a

"general societal problem that has persisted since the 18th century," the

court engages in a "straightforward historical analysis:" the government

must show "a distinctly similar historical regulation addressing that

problem." *Bruen*, 597 U.S. at 26. Only as to "other cases implicating

unprecedented societal concerns or dramatic technological changes," or

concerning "modern regulations that were unimaginable at the

founding," may the government meet its burden using "analogical

reasoning," which involves the "relevantly similar" inquiry. *Id.* at 28.

The government ignored this distinction below, asserting that the regulations need only be "relevantly similar," and entirely rejecting *Bruen's* "distinctly similar" test. 1A.74-75, 1A.122-23. But *Bruen's* mandate cannot be ignored. *United States v. Daniels*, 77 F.4th 337, 342 (5th Cir. 2023) ("*Bruen* helpfully gave us two conceptual pathways").

Properly framed, the "problem" § 922(a)(3) addresses – receiving and possessing firearms that originate from outside of one's jurisdiction – is a "general societal problem that has persisted since the 18th century." *Bruen*, 597 U.S. at 26. Neither of the two types of laws the government cites are "distinctly similar" to § 922(a)(3). One forbids colonists from *selling* guns outside of the colony, to people (Native Americans) deemed dangerous. 1A.75 (government conceding these laws "were designed to keep firearms out of the hands of those who might be dangerous"). The other laws, concerning gunpowder, were state regulations designed to "protect citizens from explosions." 1A.75. Section 922(a)(3) does not forbid sale at all, let alone to dangerous persons. Nor does it merely establish a regulatory framework for public safety purposes. Indeed, other provisions of 18 U.S.C. § 922 explicitly accomplish these aims. *See, e.g.,* 18 U.S.C. § 922(a)(6) (prohibiting false

22

statements to FFL in connection with gun acquisition); § 922(d)(3) (criminalizing sale of firearms to prohibited persons)  Instead, § 922(a)(3) exclusively burdens an individual person's acquisition and possession of out-of-state firearms. In the end, the government failed to point to any founding-era laws that are "distinctly similar" to § 922(a)(3). The laws relied upon by the government simply are too dissimilar to meet *Bruen's* test.

The district court's analysis adopted the government's formulation of the *Bruen* test. SPA.18 ("'Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are *relevantly similar*'") (emphasis added; quoting *Bruen*, 597 U.S. at 28). As shown, this was an error of law. *Bruen*, 597 U.S. at 26; *see Daniels*, 77 F.4th 342. And it relied on the inapposite, dissimilar laws cited by the government in holding that the government had met its burden. SPA.18-23.

Moreover, the court also referred to founding-era law that the government had not, itself, relied upon: the Third Congress's prohibition on exportation of weapons from the United States; and

23

British and colonial laws "disarming those deemed dangerous and requiring large swathes of the citizenry to swear loyalty oaths in order to demonstrate they were not dangerous." SPA.20-21, 23. As *Bruen* instructed, however, it is the government's burden to prove the national historical tradition, not the court's: "'[i]n our adversarial system of adjudication, we follow the principle of party presentation,'" and "[c]ourts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.7 (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)).

In light of the foregoing, as well as the *de novo* standard of review this Court must employ, the district court's determination that the government had met its burden to prove that § 922(a)(3) "is consistent with this Nation's historical tradition of firearm regulation," SPA.18, was incorrect. Accordingly, reversal is required.

### E. Section 922(a)(3) Violates the Second Amendment, Facially and As-Applied.

Because the nation has no historical tradition of prohibiting an individual's possession or acquisition of out-of-state firearms, "no set of circumstances exists under which the Act would be valid," and § 922(a)(3) is facially unconstitutional. *United States v. Salerno*, 481 U.S.

24

739, 745 (1987). *Cf. United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir. 2023) (holding § 922(g)(8) facially unconstitutional), *certiorari granted* No. 22-915 (June 30, 2023). Section 922(a)(3) is, by necessity, thus also unconstitutional as-applied to Lucha El. *Cf. Daniels*, 77 F.4th at 340 (holding § 922(g)(3) unconstitutional as-applied to defendant); *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023) (*en banc*) (holding § 922(g)(1) unconstitutional as applied to defendant).

## CONCLUSION

For the foregoing reasons, Lucha El's conviction should be reversed and the superseding indictment dismissed.

Dated:    New York, New York
          May 3, 2024

                              Respectfully submitted,

                              _____/s/_____
                              **KENDRA L. HUTCHINSON**

                              Federal Defenders of New York, Inc.
                               Appeals Bureau
                              52 Duane Street, 10th Floor
                              New York, NY 10007
                              (212) 417-8731
                              kendra_hutchinson@fd.org

                              *Counsel for Lucha El*

25

## CERTIFICATE OF SERVICE

I certify that I have caused a copy of this Brief to be filed with the Court's CM/ECF system, which will effect service on all counsel of record.

Dated:     New York, New York
           May 3, 2024


                             /s/
                          **KENDRA L. HUTCHINSON**
                          Assistant Federal Defender

26

### CERTIFICATE OF COMPLIANCE

1.  This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) and 32(e), and Local Rule 32(a)(4)(A) because:

> this Brief contains 4,451 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.  This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

> this Brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch in Century Schoolbook type style.

Dated:     New York, New York
           May 3, 2024


_____
                    /s/
**KENDRA L. HUTCHINSON**
Assistant Federal Defender