# 24-162

## United States Court of Appeals for the Second Circuit

---

UNITED STATES OF AMERICA,

*Appellee,*

v.

STEVEN PEREZ, also known as Sealed Defendant 2, also known as Lucha,

*Defendant-Appellant,*

KEITH VEREEN, also known as Sealed Defendant 1,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

**BRIEF FOR THE STATES OF NEW YORK, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN, AND THE DISTRICT OF COLUMBIA AS AMICI CURIAE IN SUPPORT OF APPELLEE AND AFFIRMANCE**

---

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
ANAGHA SUNDARARAJAN
 *Assistant Solicitor General*
 *of Counsel*
(*Additional counsel listed on signature pages.*)

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Amici Curiae
28 Liberty Street
New York, New York 10005
(212) 416-8073

Dated: August 12, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .........................................................................ii

INTRODUCTION AND INTERESTS OF AMICI CURIAE ...................1

ARGUMENT ....................................................................................3

POINT I

REGULATION OF THE COMMERCIAL SALE OF FIREARMS IS CRITICAL
TO PROTECTING PUBLIC SAFETY ............................................................3

    A.    Amici's Regulations Prevent the Misuse of Firearms. .............6

    B.    State Regulations Ensure That Law Enforcement Can
        Effectively Investigate Gun Crimes. .....................................11

POINT II

SECTION 922(A)(3) REINFORCES STATE FIREARMS REGULATIONS
CONSISTENT WITH THE SECOND AMENDMENT ......................................13

    A.    Barring the Federal Government from Enforcing
        § 922(a) Would Undermine State Firearm Regulations. .......13

    B.    Section 922(a)(3) Is Consistent with the Second
        Amendment. ...........................................................................17

CONCLUSION ...............................................................................21

i

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Abramski v. United States,*
573 U.S. 169 (2014)................................................................5

*B & L Producs., Inc. v. Newsom,*
104 F.4th 108 (9th Cir. 2024) .......................................18-20

*Bond v. United States,*
572 U.S. 844 (2014).............................................................6

*Gazzola v. Hochul,*
88 F.4th 186 (2d Cir. 2023).................................................18

*Huddleston v. United States,*
415 U.S. 814 (1974).............................................................14

*Mance v. Sessions,*
896 F.3d 699 (5th Cir. 2018)..........................................14, 19

*McDonald v. City of Chicago,*
561 U.S. 742 (2010).............................................................4

*McRorey v. Garland,*
99 F.4th 831 (5th Cir. 2024) ...............................................18

*Metropolitan Life Ins. Co. v. Massachusetts,*
471 U.S. 724 (1985).............................................................6

*New York State Rifle and Pistol Association v. Bruen,*
597 U.S. 1 (2022)............................................................19-20

*United States v. DeCastro,*
682 F.3d 160 (2d Cir. 2012) ...............................................19

*United States v. Focia,*
869 F.3d 1269 (11th Cir. 2017).........................................19

ii

| Cases | Page(s) |
|---|---|

*United States v. Rahimi,*
   602 U.S. ---, 144 S. Ct. 1889 (2024) ...................................................... 3

## Laws & Regulations

*Federal*

18 U.S.C.
   § 922 ............................................................................................ 4, 9
   § 923 ........................................................................................ 3-4, 12

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ................. 14

*States & D.C. (alphabetical by jurisdiction)*

California Penal Code
   § 26500 ............................................................................................. 6
   § 26705 .......................................................................................... 6-7
   § 26710 ............................................................................................. 7
   § 26720 ............................................................................................. 7
   § 26805 ............................................................................................. 7
   § 26806 ........................................................................................... 10
   § 26885 ........................................................................................... 12
   § 26915 ............................................................................................. 8
   § 26920 ............................................................................................. 8
   § 28100 ........................................................................................... 12
   § 28150 ........................................................................................... 12
   § 28160 ........................................................................................... 12
   § 28210 ........................................................................................... 12
   § 28215 ........................................................................................... 12

Colorado Rev. Stat. § 18-12-402 ............................................................ 12

## Laws & Regulations                                      Page(s)

*States & D.C. (alphabetical by jurisdiction)*

Connecticut Gen. Stat.
    § 29-28 ............................................................................... 7
    § 29-28b ..................................................................... 10, 12
    § 29-31 ............................................................................. 12
    § 29-37f ............................................................................. 8
    § 53-202g ........................................................................ 12

Delaware Code Ann. tit. 24, § 904 ...................................... 8, 12

District of Columbia Code § 7-2504.04 ................................. 12

430 Illinois Comp. Stat.
    § 68/5-10 ........................................................................ 6-7
    § 68/5-15 ........................................................................... 7
    § 68/5-30 ........................................................................... 8
    § 68/5-35 ..................................................................... 7, 12
    § 68/5-40 ........................................................................... 8
    § 68/5-50 ......................................................................... 10
    § 68/5-55 ......................................................................... 10

Maine Rev. Stat. tit. 25 § 2012 ............................................ 7

Maryland Code Ann., Pub. Safety
    § 5-107 .............................................................................. 7
    § 5-108 .............................................................................. 7
    § 5-145 ............................................................................ 12
    § 5-145.1 ......................................................................... 10
    § 5-146 ............................................................................ 12

Massachussetts Gen. Laws
    ch. 6, § 172M ................................................................... 8
    ch. 140, § 122 ................................................................... 6
    ch. 140, § 122B ................................................................ 6
    ch. 140, § 123 ........................................................... 7, 9, 12
    ch. 140, § 128 ................................................................... 6

## Laws & Regulations                                     **Page(s)**

*States & D.C. (alphabetical by jurisdiction)*

Michigan Comp. Laws § 28.422 ............................................... 12

Minnesota Stat.
    § 624.7132 ................................................................... 12
    § 624.7161 ................................................................... 10

Nebraska Rev. Stat. § 69-2426 ................................................ 7

New Hampshire Rev. Stat. Ann. § 650-C:1 ........................ 7

New Jersey
    Admin. Code § 13:54-3.11 ...................................... 10
    Stat. Ann. § 2C:58-2 ........................................ 8-9, 12
    Stat. Ann. § 2C:58-3.3 .............................................. 9
    Stat. Ann. § 2C:58-19 ............................................ 12

New York
    Gen. Bus. Law § 396-ee .......................................... 7
    Gen. Bus. Law § 875-b ........................................... 10
    Gen. Bus. Law § 875-c ............................................. 9
    Gen. Bus. Law § 875-d ............................................ 7
    Gen. Bus. Law § 875-e ............................................ 8
    Gen. Bus. Law § 875-f ....................................... 7, 12
    Penal Law § 400.00 .......................................... 7, 9
    Penal Law § 400.10 ............................................. 12

North Carolina Gen. Stat. § 14-406 ................................. 12

Oregon Rev. Stat.
    § 166.397 ................................................................... 12
    § 166.405 ..................................................................... 7

18 Pennsylvania Cons. Stat. § 6113 ................................. 10

| Laws & Regulations | Page(s) |
|---|---|

*States & D.C. (alphabetical by jurisdiction)*

Rhode Island Gen. Laws
§ 11-47-48.1 ................................................................. 12
§ 11-47-60.1 ................................................................. 10
§ 11-47-60.4 ................................................................... 7

Vermont Stat. Ann. tit. 13, § 4024 ....................................... 7

Virginia Code Ann. § 18.2-308.2:3 ...................................... 8

Washington
Ch. 288, 2024 Wash. Laws (Mar. 27, 2024)...................... 10
Rev. Code § 9.41.090 ...................................................... 7
Rev. Code § 9.41.110 ...................................................... 8

## Miscellaneous Authorities

Anthony A. Braga et al., *The Illegal Supply of Firearms*, 29
  Crime & Crim. Just. 219 (2002),
  https://scholar.harvard.edu/files/markmoore/files/the_illegal_
  supply_of_firearms_02.pdf ........................................... 11, 13

ATF, *Firearms Trace Data: Illinois – 2021* (Sept. 15, 2022),
  https://www.atf.gov/resource-center/firearms-trace-data-
  illinois-2021 ................................................................. 16

ATF, *Firearms Trace Data: Illinois – 2022* (Sept. 27, 2023),
  https://www.atf.gov/resource-center/firearms-trace-data-
  illinois-2022 ................................................................. 16

ATF, *Firearms Trace Data: Maryland – 2021* (Sept. 15, 2022),
  https://www.atf.gov/resource-center/firearms-trace-data-
  maryland-2021 .............................................................. 16

ATF, *Firearms Trace Data: Maryland – 2022* (Sept. 27, 2023),
  https://www.atf.gov/resource-center/firearms-trace-data-
  maryland-2022 .............................................................. 16

**Miscellaneous Authorities**                                                   **Page(s)**

ATF, *Firearms Trace Data: Massachusetts – 2021* (Sept. 15, 2022), https://www.atf.gov/resource-center/firearms-trace-data-massachusetts-2021 .......................................................................... 16

ATF, *Firearms Trace Data: Massachusetts – 2022* (Sept. 27, 2023), https://www.atf.gov/resource-center/firearms-trace-data-massachusetts-2022 .......................................................................... 16

ATF, *Firearms Trace Data: New York – 2021* (Sept. 15, 2022), https://www.atf.gov/resource-center/firearms-trace-data-new-york-2021 ................................................................................... 16

ATF, *Firearms Trace Data: New York – 2022* (Sept. 27, 2023), https://www.atf.gov/resource-center/firearms-trace-data-new-york-2022 ................................................................................... 16

Cal. Assembly Comm. on Pub. Safety, Bill Analysis for S.B. 1384, 2021–22 Reg. Sess. (June 8, 2022), https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202120220SB1384# ........................................... 5

Christopher N. Morrison et al., *Firearm Homicide Incidence, Within-State Firearms Laws, and Interstate Firearms Laws in US Counties*, 32 Epidemiology 36 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7708450/ .................... 11

Daniel W. Webster et al., *Effects of State-Level Firearm Seller Accountability Policies on Firearms Trafficking*, 86 Urb. Health 525 (2009), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2704273/pdf/11524_2009_Article_9351.pdf................................................. 4, 11, 13

David M. Kennedy et al., *Youth Violence in Boston: Gun Markets, Serious Youth Offenders, and a Use-Reduction Strategy*, L. & Contemp. Probs. 147 (1996), https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=4315&context=lcp ............................................................. 17

**Miscellaneous Authorities**                               **Page(s)**

Erin G. Andrade et al., *Firearm Laws and Illegal Firearm Flow Between US States*, 88 J. Trauma & Acute Care Surgery 752 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7799862/ ..... 11, 16-17

Giffords L. Ctr., *Gun Dealers: Summary of State Law* (n.d.), https://giffords.org/lawcenter/gun-laws/policy-areas/gun-sales/gun-dealers/ ..................................................... 6-7, 12

Ill. State Police, *Firearm Dealer Licensing Act - Training for Certified Licenses* 31-36 (Nov. 2020), https://isp.illinois.gov/StaticFiles/docs/FSB/FDLC/FDLC%20Training%20Power%20Point_FINAL%20110920.pptx ...................... 9

Kelsie Y. Chesnut et al., *Not an 'Iron Pipeline,' but Many Capillaries: Regulating Passive Transactions in Los Angeles' Secondary, Illegal Gun Market*, 23 Inj. Prevention 226 (Aug. 2017), https://escholarship.org/content/qt87k8w0zj/qt87k8w0zj_noSplash_6b270a3f0012b478687f2ebedb0d2cb6.pdf?t=ou1wug ............. 13

Leah Roberts et al., *Interstate Highway Connections and Traced Gun Transfers Between the 48 Contiguous United States*, 7 JAMA Network Open, e245662 (Apr. 9, 2024) https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2817314 ........................................................ 15

N.Y. State Sen. Introducer's Mem. in Support, *in* Bill Jacket for ch. 207 (2022).......................................................... 5

N.Y. Office of the Att'y Gen., *Target on Trafficking: New York Crime Gun Analysis* (2015), https://targettrafficking.ag.ny.gov/ .................................................... 16

N.Y. State Police, *New York Gun Dealer Training* 10 (Jan. 27, 2023), https://troopers.ny.gov/system/files/documents/2023/01/2022-nys-dealer-training.pdf ....................................................................... 9

## Miscellaneous Authorities                                  Page(s)

Office of the Inspector Gen., U.S. Dep't of Just., Report No. I-2004-0005, *Inspections of Firearms Dealers by the Bureau of Alcohol, Tobacco, Firearms and Explosives* (July 2004), https://oig.justice.gov/reports/ATF/e0405/final.pdf ............................. 5

Philip J. Cook et al., *Some Sources of Crime Guns in Chicago: Dirty Dealers, Straw Purchasers, and Traffickers*, 104 J. Crim. L. & Criminology 717 (2015), https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7538&context=jclc ........................................ 11, 17, 19

S. Rep. No. 90-1097 (1968) ......................................................... 14-15, 18

## INTRODUCTION AND INTERESTS OF AMICI CURIAE

Pursuant to Rule 29 of the Federal Rules of Appellate Procedure, the States of New York, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin, and the District of Columbia submit this brief as amici curiae in support of the appellee, the United States of America, and ask this Court to reaffirm the constitutionality of 18 U.S.C. § 922(a)(3), which makes it unlawful to transfer or receive a firearm from out of state, except through a federally licensed firearms dealer, importer, or manufacturer.

Amici States have a sovereign obligation to safeguard the health, safety, and well-being of their citizens, and to exercise their police power to protect public safety. Exercising their police powers in service of these goals, amici have adopted a range of measures that regulate weapons and weapons accessories that ensure that firearms and ammunition sold within their borders are not misused for criminal activity while protecting their residents' Second Amendment right. Although state regulations differ, amici all share the firm conviction that the Constitution allows

States to act to prevent gun violence in a manner that is adapted to individual States' needs.

However, prior to the passage of 18 U.S.C. § 922(a)(3), it was easy for criminals to circumvent state regulations on firearm sales by transporting firearms across state lines. It was precisely to address that problem, and to support state regulation, that Congress enacted § 922(a)(3) as part of the Gun Control Act of 1968; Congress found that States have a strong interest in preventing interstate transportation of firearms used in crime. That interest is even stronger today, given the ease of interstate travel and the ability to purchase firearms online. Federal enforcement of § 922(a)(3) is particularly important because guns that are sold across state lines are more likely to be used in criminal activity than guns that originate within the state. Indeed, in many Amici States, the majority of guns recovered by law enforcement during criminal investigations (so-called "crime guns") originated outside of the State and were illegally trafficked across state borders.

Consequently, amici have a strong interest in the continuing enforcement of federal statutes designed to combat interstate firearms

trafficking and to ensure that state regulations of firearms sales can be effectively enforced.

Statutes like § 922(a)(3) do not implicate the Second Amendment because they do not prevent a law-abiding citizen from purchasing, owning, or carrying a firearm. Rather, they support state licensing regimes by requiring citizens to purchase firearms from licensed in-state dealers through lawful, recorded transactions, rather than from the black market.

## ARGUMENT

## POINT I

### REGULATION OF THE COMMERCIAL SALE OF FIREARMS IS CRITICAL TO PROTECTING PUBLIC SAFETY

As the Supreme Court has consistently recognized, laws imposing "'conditions and qualifications on the commercial sale of arms' are presumptively constitutional." *United States v. Rahimi*, 602 U.S. ---, 144 S. Ct. 1889, 1923 (2024) (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) (plurality op.)). Under federal law, firearms dealers, manufacturers, and importers must obtain a license from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). 18 U.S.C. § 923. Federally licensed dealers, importers, and manufacturers

(FFLs) are required to maintain records of all firearm sales and make those records available to ATF upon request, 18 U.S.C. § 923(g)(1); to report any theft of loss of firearms within 48 hours to ATF and local authorities, 18 U.S.C. § 923(g)(6); and to conduct a background check before transferring firearms to a purchaser, 18 U.S.C. § 922(t)(1). FFLs are also prohibited from transferring a firearm to a person who is not authorized to possess that firearm under local, state, or federal law. 18 U.S.C. § 922(t)(2) (referencing 18 U.S.C. § 922(d), (g), (n)).

Additionally, state governments have the ability, consistent with the Second Amendment, to experiment with reasonable firearms regulations governing the commercial sale of firearms, *see McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality op.), to ensure effective, consistent oversight of firearms dealers. Indeed, this kind of oversight is essential to ensuring that dealers do not sell guns and ammunition to individuals who cannot legally own firearms and who pose a threat to public safety.[1] Consequently, States, including many amici, have exercised

---

[1] *See* Daniel W. Webster et al., *Effects of State-Level Firearm Seller Accountability Policies on Firearms Trafficking*, 86 J. Urb. Health 525, 533 (2009). For authorities available online, full URLs appear in the table of authorities. All URLs were last visited on August 12, 2024.

their police powers to implement a variety of complementary regulations tailored to local needs and designed to prevent misuse of firearms. State-level oversight of firearms dealers is particularly important because ATF generally does not have the resources necessary to consistently inspect every FFL to ensure compliance with federal law.[2]

The broad range of applicable state regulations includes state licensing regimes, security and antitheft measures, and recordkeeping requirements. Like federal law, these state regulations further two public safety goals: (1) keeping guns out of the hands of criminals and others who should not have them, including minors and people with mental illnesses; and (2) assisting law enforcement authorities in investigating serious crimes. *See Abramski v. United States*, 573 U.S. 169, 180 (2014) (federal regulations); *see also, e.g.*, N.Y. State Sen. Introducer's Mem. in Support, *in* Bill Jacket for ch. 207 (2022) at 4 (New York regulations); Cal. Assembly Comm. on Pub. Safety, Bill Analysis for S.B. 1384, 2021–22 Reg. Sess. (June 8, 2022) (California regulations).

---

[2] *See* Office of the Inspector Gen., U.S. Dep't of Just., Report No. I-2004-0005, *Inspections of Firearms Dealers by the Bureau of Alcohol, Tobacco, Firearms and Explosives* (July 2004).

## A. Amici's Regulations Prevent the Misuse of Firearms.

States have a sovereign duty to protect "the lives, limbs, health, comfort, and quiet of all persons" within their borders and have broad authority to legislate for the public good. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) (quotation marks omitted); *see also Bond v. United States*, 572 U.S. 844, 854 (2014). Amici all share this commitment to protecting public safety through effective regulation of firearms sales, and have implemented a variety of measures to further this goal.

For example, sixteen States and the District of Columbia require firearms dealers to obtain a state license to sell certain firearms.[3] In many States, firearms dealers must have a valid federal firearms license and must register with the state police, pass a background check, and obtain any necessary permits from the locality in which they seek to operate

---

[3] Of these States, ten, including the District of Columbia, require a state license for retail sales of all firearms and ammunition. *See, e.g.*, Cal. Penal Code §§ 26500, 26705; 430 Ill. Comp. Stat. § 68/5-10; Mass. Gen. Laws ch. 140, §§ 122, 122B, 128; *see also* Giffords L. Ctr., *Gun Dealers: Summary of State Law* (n.d.) (compiling state laws).

before selling firearms within the State.[4] Licensed dealers are often subject to inspection by state police and are generally permitted to sell firearms only from the retail location at which they are registered.[5]

Nineteen States require licensed dealers either to display certain written warnings at each point of sale or to provide all purchasers with a copy of those warnings. These warnings largely focus on the risks of storing firearms in a manner that is easily accessible to children.[6] Some States also require dealers to warn purchasers that access to firearms can increase the risk of suicide or death during domestic violence disputes.[7] Other States require dealers to inform purchasers of their obligation to store firearms safely.[8]

---

[4] *See, e.g.*, Cal. Penal Code §§ 26705, 26710; Conn. Gen. Stat. § 29-28; 430 Ill. Comp. Stat. §§ 68/5-10; Md. Code Ann., Pub. Safety §§ 5-107, 5-108; N.Y. Penal Law § 400.00(1-a), (3)-(4).

[5] *See, e.g.*, Cal. Penal Code § 26720, 26805(a); 430 Ill. Comp. Stat. § 68/5-15, -35; N.Y. Gen. Bus. Law §§ 875-d, 875-f; Mass. Gen. Laws ch. 140, § 123.

[6] *See* Giffords L. Ctr., *Gun Dealers, supra*.

[7] *See, e.g.*, Neb. Rev. Stat. § 69-2426(b); R.I. Gen. Laws § 11-47-60.4(b); Vt. Stat. Ann. tit. 13, § 4024(b); Wash. Rev. Code § 9.41.090(3)(b)(ii).

[8] *See, e.g.*, Me. Rev. Stat. tit. 25 § 2012; Mass. Gen. Laws ch. 140, § 123; N.H. Rev. Stat. Ann. § 650-C:1(VII); N.Y. Gen. Bus. Law § 396-ee(2); Or. Rev. Stat. § 166.405.

Additionally, in eight States, firearms dealers are required as a condition of their license to conduct background checks on every employee who handles, sells, or delivers firearms and to verify that those employees are authorized to possess firearms under state and federal law.[9] New York and Illinois require all firearms dealers and their employees to receive annual training from state police on how to comply with state and local licensing laws, prevent and respond to theft, and educate customers on responsible gun ownership and safe storage.[10]

As noted above (at 4), firearms dealers are required by federal and state law to verify that a purchaser is authorized by state law to own a firearm before transferring firearms or ammunition to that purchaser, including verifying that purchasers have any state or local license necessary

---

[9] *See* Cal. Penal Code § 26915(a); Conn. Gen. Stat. § 29-37f; Del. Code Ann. tit. 24, § 904(b); 430 Ill. Comp. Stat. § 68/5-40; Mass. Gen. Laws ch. 6, § 172M; N.J. Stat. Ann. § 2C:58-2(a); Va. Code Ann. § 18.2-308.2:3; Wash. Rev. Code § 9.41.110(5)(b).

[10] *See* N.Y. Gen. Bus. Law § 875-e(1); 430 Ill. Comp. Stat. § 68/5-30. California enacted legislation in 2023 that requires all firearms dealers and their employees to go through similar training. That requirement will take effect on July 1, 2026. *See* Cal. Penal Code § 26920.

to purchase and keep the firearms they are looking to buy.[11] States also require firearms dealers to take affirmative steps to prevent firearms from being purchased by minors or others who may pose a threat to public safety. For example, New York law requires a firearms dealer to "exclude all persons under eighteen years of age from those portions of its premises" where firearms and ammunition are stocked and sold, unless that person is accompanied by a parent or guardian.[12] As noted above, New York and Illinois also require dealers to provide in-depth training to their employees on how to identify and respond to illegal purchases and fraudulent activity, including straw purchases—purchases by an individual on behalf of another person who cannot legally possess a firearm, often because that individual has a criminal record.[13]

Finally, several States have required firearms dealers to implement basic security measures at their retail locations to prevent theft. Seven

---

[11] *See, e.g.*, Mass. Gen. Laws ch. 140, § 123; N.J. Stat. Ann. § 2C:58-2(4)-(5), N.J. Stat. Ann. § 2C:58-3.3; N.Y. Penal Law § 400.00(12); *see also* 18 U.S.C. § 922(t)(1).

[12] N.Y. Gen. Bus. Law § 875-c.

[13] *See* N.Y. State Police, *New York Gun Dealer Training* 10, 16-18 (Jan. 27, 2023); Ill. State Police, *Firearm Dealer Licensing Act – Training for Certified Licenses* 31-36 (Nov. 2020).

States currently require all firearms dealers to ensure that any premise where firearms are displayed, stored, or sold is equipped with a security system that can detect unauthorized entry.[14] New York, Maryland, California, and Illinois additionally require that this security system videotape all points of entry and points of sale, enabling both the dealer and law enforcement to clearly identify individuals entering and exiting the store and purchasing firearms or ammunition.[15] Several states also require dealers to implement safe storage measures, including by storing firearms separately from ammunition or by keeping firearms locked or in fireproof vaults or safes outside of normal business hours.[16]

---

[14] *See* Cal. Penal Code § 26806(a); Conn. Gen. Stat. § 29-28b(a)(4); 430 Ill. Comp. Stat. § 68/5-55; Md. Code Ann., Pub. Safety § 5-145.1; Minn. Stat. § 624.7161; N.J. Admin. Code § 13:54-3.11; N.Y. Gen. Bus. Law § 875-b. Washington recently enacted legislation that requires firearms dealers to implement similar security measures in all stores, which will go into effect on July 1, 2025. *See* Ch. 288, 2024 Wash. Laws (Mar. 27, 2024) (to be codified at Wash. Rev. Code § 9.41.110(9)).

[15] *See* Cal. Penal Code § 26806(a); 430 Ill. Comp. Stat. § 68/5-50; Md. Code Ann., Pub. Safety § 5-145.1; N.Y. Gen. Bus. Law § 875-b.

[16] *See, e.g.*, Md. Code Ann. Pub. Safety § 5-145.1(a)(2); Minn. Stat. § 624.7161; N.Y. Gen. Bus. Law § 875-b(1); 18 Pa. Cons. Stat. § 6113; R.I. Gen. Laws § 11-47-60.1(b).

Studies have shown that these kinds of requirements help prevent theft and straw purchases.[17] And because theft and straw purchases are a major source of crime guns,[18] these kinds of regulations are essential to reduce violent crime and protect public safety.

**B.      State Regulations Ensure That Law Enforcement Can Effectively Investigate Gun Crimes.**

Amici have also implemented a variety of measures, including recordkeeping and reporting requirements, designed to provide law enforcement with ready access to thorough, accurate, up-to-date information when investigating violent crime.

Currently, seventeen States require firearms dealers to maintain records of their inventory and sales, including the make, model, and serial

---

[17] *See, e.g.*, Christopher N. Morrison et al., *Firearm Homicide Incidence, Within-State Firearms Laws, and Interstate Firearms Laws in US Counties*, 32 Epidemiology 36, 40-43 (2021); Erin G. Andrade et al., *Firearm Laws and Illegal Firearm Flow Between US States*, 88 J. Trauma & Acute Care Surgery 752, 755-57 (2020); Webster et al., *Effects of State-Level Firearm Seller Accountability Policies on Firearms Trafficking*, *supra*, at 533-35.

[18] *See* Philip J. Cook et al., *Some Sources of Crime Guns in Chicago: Dirty Dealers, Straw Purchasers, and Traffickers*, 104 J. Crim. L. & Criminology 717, 723-24, 743-45 (2015); Anthony A. Braga et al., *The Illegal Supply of Firearms*, 29 Crime & Crim. Just. 319, 326-27, 329-30, 335-37 (2002).

number of all firearms and the identity and address of all purchasers.[19] Of those, ten States require dealers to either affirmatively report firearm sales to law enforcement or to ensure that the dealer's records are available for inspection by law enforcement at any time.[20] Nine States also require firearms dealers to report any lost or stolen inventory to state and local law enforcement, in addition to ATF, within hours of discovery.[21]

These regulations, along with the ones discussed above, help curb unlawful access to firearms through theft, straw purchases, and illegal

---

[19] *See, e.g.*, Cal. Penal Code §§ 28100(a), 28150-28160; Colo. Rev. Stat. § 18-12-402; Conn. Gen. Stat. § 29-31; D.C. Code § 7-2504.04; Del. Code Ann. tit. 24, § 904(a); Md. Code Ann., Pub. Safety § 5-145(a); Mass. Gen. Laws ch. 140, § 123; N.J. Stat. Ann. § 2C:58-2(b); N.Y. Gen. Bus. Law § 875-f; N.C. Gen. Stat. § 14-406; *see also* Giffords L. Ctr., *Gun Dealers, supra*.

[20] *See, e.g.*, Cal. Penal Code §§ 28210(c)(3), 28215(c)(3); Conn. Gen. Stat. § 29-31; D.C. Code § 7-2504.04(b)-(c); 430 Ill. Comp. Stat. § 68/5-35; Md. Code Ann., Pub. Safety § 5-145; Mass. Gen. Laws ch. 140, § 123; Mich. Comp. Laws § 28.422(5)-(6); Minn. Stat. § 624.7132; N.J. Stat. Ann. § 2C:58-2(b); N.Y. Gen. Bus. Law § 875-f(3).

[21] *See* 18 U.S.C. § 923(g)(6); Cal. Penal Code § 26885(b); Conn. Gen. Stat. §§ 29-28b(a)(13), 53-202g; D.C. Code § 7-2504.04(a)(2)(A); Md. Code Ann., Pub. Safety § 5-146(b); Mass. Gen. Laws ch. 140, § 123; N.J. Stat. Ann. § 2C:58-19; N.Y. Penal Law § 400.10; Or. Rev. Stat. § 166.397; 11 R.I. Gen. Laws § 11-47-48.1.

sales.[22] Indeed, studies have shown that these kinds of state-level regulations effectively reduce the number of crime guns that originate with licensed firearms dealers located in the state in which the firearm is recovered.[23] Consequently, as explained above (at 11), these state regulations are critically important to reducing violent crime.

## POINT II

### SECTION 922(A)(3) REINFORCES STATE FIREARMS REGULATIONS CONSISTENT WITH THE SECOND AMENDMENT

### A. Barring the Federal Government from Enforcing § 922(a) Would Undermine State Firearm Regulations.

As Congress recognized in 1968 when it enacted 18 U.S.C. § 922(a) as part of the federal Gun Control Act, state regulations cannot be effectively implemented without restrictions on interstate firearms trafficking, and state regulations alone cannot prevent interstate firearms trafficking. One of Congress's motivating concerns when enacting the Gun Control

---

[22] *See* Kelsie Y. Chesnut et al., *Not an 'Iron Pipeline,' but Many Capillaries: Regulating Passive Transactions in Los Angeles' Secondary, Illegal Gun Market*, 23 Inj. Prevention 226, 230 (Aug. 2017).

[23] *See, e.g.*, *id.*; Webster et al., *Effects of State-Level Firearm Seller Accountability Policies, supra,* at 533-34; *see also* Braga et al., *The Illegal Supply of Firearms, supra,* at 333.

13

Act was the extent to which the significant rise in violent crime using firearms could be attributed to the ease with which dangerous individuals could evade state regulations of firearm sales and purchase guns through mail order from out-of-state suppliers. *See* S. Rep. No. 90-1097, at 76-77 (1968); *see also Huddleston v. United States*, 415 U.S. 814, 824 (1974) (the widespread traffic in firearms "contributed significantly to the prevalence of lawlessness and violent crime in the United States."). The Gun Control Act was expressly intended to provide federal support to efforts by state and local law enforcement in "their fight against crime and violence." Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, § 101; *see Mance v. Sessions*, 896 F.3d 699, 705-06 (5th Cir. 2018).

The various subsections of § 922(a) are therefore designed to work together to channel interstate commerce in firearms through FFLs, which in turn enable States to regulate the commercial sale and transfer of firearms more effectively. S. Rep. No. 90-1097, at 79. For example, subsections 922(a)(1) and 922(a)(2) prohibit anyone other than an FFL from shipping or transporting, or engaging in the business of shipping or transporting, firearms and ammunition across state lines, except in certain narrow circumstances. Subsection 922(a)(3), in turn, prohibits anyone

other than an FFL from receiving firearms that were purchased or obtained from out of state. Section 922(a)'s various provisions thus ensure that law enforcement can combat trafficking at every step in the supply chain by empowering law enforcement to investigate both the individuals sending trafficked firearms across state lines and the individuals tasked with receiving those firearms in another state. *See* S. Rep. No. 90-1097, at 113.

In the decades since the Act was passed, amici have relied on federal enforcement to combat firearms trafficking, and their experience has confirmed the need for robust federal enforcement in this area. As explained above (at 11), state regulations of firearms dealers often prevent dangerous individuals from stealing or purchasing firearms and ammunition from *in-state* firearms dealers. However, several states, including Amici, have seen an influx of crime guns that originate from out of state and are trafficked into their borders through so-called iron pipelines.[24] For example, between 2010 and 2015, approximately 74% of all crime guns recovered

---

[24] *See* Leah Roberts et al., *Interstate Highway Connections and Traced Gun Transfers Between the 48 Contiguous United States*, 7 JAMA Network Open, No. e245662, at 2 (Apr. 9, 2024).

in New York originated outside of New York State.[25] That figure has increased in subsequent years.[26] Illinois, Maryland, and Massachusetts similarly have seen an influx of crime guns from out of state. In both 2021 and 2022, the majority of crime guns recovered in these states were trafficked from outside the state.[27]

If this Court were to declare § 922(a)(3) unconstitutional, the already troubling number of out-of-state guns used to commit crimes in Amici States would almost certainly rise. And any rise in the number of trafficked guns would have a disastrous effect on amici's communities: studies have

---

[25] *See* N.Y. York Office of the Att'y Gen., *Target on Trafficking: New York Crime Gun Analysis* (2015).

[26] *See, e.g.*, ATF, *Firearms Trace Data: New York – 2022* (Sept. 27, 2023) (82% of crime guns originated out of state); ATF, *Firearms Trace Data: New York – 2021* (Sept. 15, 2022) (85% of crime guns originated out of state).

[27] *See* Andrade et al., *Firearm Laws and Illegal Firearm Flow, supra,* at 755-57; ATF, *Firearms Trace Data: Illinois – 2022* (Sept. 27, 2023) (53% of traced guns came from out of state); ATF, *Firearms Trace Data: Illinois – 2021* (Sept. 15, 2022) (53% of traced guns came from out of state); ATF, *Firearms Trace Data: Maryland – 2022* (Sept. 27, 2023) (57% of traced guns came from out of state); ATF, *Firearms Trace Data: Maryland – 2021* (Sept. 15, 2022) (56% of traced guns came from out of state); ATF, *Firearms Trace Data: Massachusetts – 2022* (Sept. 27, 2023) (63% of traced guns came from out of state); ATF, *Firearms Trace Data: Massachusetts – 2021* (Sept. 15, 2022) (69% of traced guns came from out of state).

repeatedly shown that guns sold from out of state are more likely to be associated with criminal activity as compared to guns that originate within the State, particularly among youth offenders.[28] Statutes like § 922(a)(3) are therefore essential to States' efforts to combat violent crime within their borders.

## B.  Section 922(a)(3) Is Consistent with the Second Amendment.

Contrary to appellant's argument (Br. for Appellant at 13-20), § 922(a)(3) is entirely consistent with the Second Amendment because the federal law's restriction on the interstate transport of firearms, like state-level regulations of firearms dealers, does not prevent a law-abiding citizen from purchasing, owning, or carrying a firearm.

As this Court has recognized, regulations on firearms dealers, including those that impose conditions on where and how firearms can

---

[28] *See, e.g.*, David M. Kennedy et al., *Youth Violence in Boston: Gun Markets, Serious Youth Offenders, and a Use-Reduction Strategy*, 59 L. & Contemp. Probs. 147, 171-77 (1996) (crime guns used by youth offenders tend to be newer and are, therefore, more likely to be trafficked); Cook et al., *Some Sources of Crime Guns in Chicago, supra*, at 723-24, 729 (most crime guns are trafficked, not acquired from a licensed dealer); Andrade et al., *Firearm Laws and Illegal Firearm Flow, supra*, at 755-57 (majority of crime guns in States with strict regulations originate outside the State).

be purchased, do not implicate the Second Amendment at all unless they are "so restrictive that [they] threaten a citizen's right to acquire firearms." *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023), *cert. denied*, No. 23-995, 2024 WL 3014531 (U.S. June 17, 2024). Where state and federal regulations of firearms sales do not constrain a law-abiding citizen's ability to acquire firearms and ammunition, they do not implicate with the Second Amendment. *See, e.g.*, *id.* at 196-97; *B & L Producs., Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024) (upholding California's restriction on firearm sales on state land); *McRorey v. Garland*, 99 F.4th 831, 839-40 (5th Cir. 2024) (upholding federal background checks and waiting periods).

Under this standard, § 922(a)(3)'s restriction on interstate firearms trafficking cannot be read to implicate the Second Amendment. As Congress acknowledged, § 922(a)(3) channels interstate commerce in firearms through FFLs. S. Rep. No. 90-1097, at 79. In doing so, the statute prevents individuals from purchasing trafficked guns on the black market. But it does not prevent law-abiding citizens from owning or keeping arms for self-defense; nor does it meaningfully restrict their ability to lawfully purchase firearms and ammunition from any one of many FFLs in their state of residence.

18

*See, e.g.*, *Mance*, 896 F.3d at 709-10; *United States v. DeCastro*, 682 F.3d 160, 167-68 (2d Cir. 2012); *United States v. Focia*, 869 F.3d 1269, 1286 (11th Cir. 2017).[29]

In other words, § 922(a)(3) requires individuals to obtain firearms through dealers located in their state of residence, through lawful, recorded transactions that are likely to be cheaper, more convenient, and more secure than firearms sales in the black market.[30] Appellant's preference to purchase firearms from an out-of-state trafficker is not a constitutionally protected right. *See* U.S. Br. at 18-21. The Second Amendment does not "elevate convenience and preference over all other considerations." *B & L Producs., Inc.*, 104 F.4th at 119 (quotation marks omitted). Nor does it "guarantee a certain type of retail experience" or prevent States from imposing "minor constraint[s] on the precise locations within a geographic

---

[29] As the United States explains (U.S. Br. at 13-15), these cases that predate the Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022), remain good law because they all conclude that the provisions of 18 U.S.C. § 922(a) do not burden the right to bear arms, and so do not trigger *Bruen*'s historical analysis.

[30] *See* Cook et al., *Some Sources of Crime Guns in Chicago*, *supra*, at 722-23.

area where one can acquire firearms." *Id.* (alteration marks omitted); *see also* U.S. Br. at 19-20.

In any event, even if § 922(a)(3) could be read to implicate the Second Amendment, the statute would survive constitutional scrutiny. State regulation of the commercial sale of firearms, through laws like those discussed above (at 4-13), is presumptively lawful under *Bruen*'s historical-analysis test. *See, e.g.*, *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 80-81 (2022) (Kavanaugh, J., concurring). As the United States explains, states have regulated the commercial sale of firearms and ammunition, particularly across state lines, since the time of the founding. U.S. Br. at 22-25. These state-level regulations bear a strong resemblance to various historical restrictions on the transport and sale of firearms, and they further the same public safety goals as these historical analogues. *Id.* at 25-26. An ancillary provision like § 922(a)(3), which merely supports the States' ability to enforce their own regulatory measures, is therefore also consistent with the Nation's history and tradition. *See* U.S. Br. at 22-28.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment below.

Dated:  New York, New York
        August 12, 2024

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*

By: *  /s/ Anagha Sundararajan*
   ANAGHA SUNDARARAJAN
   Assistant Solicitor General

28 Liberty Street
New York, New York 10005
(212) 416-8073
anagha.sundararajan@ag.ny.gov

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
ANAGHA SUNDARARAJAN
  *Assistant Solicitor General*
    *of Counsel*

21

ROB BONTA
  *Attorney General*
  *State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
  *Attorney General*
  *State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place, 20th Fl.
Baltimore, MD 21202

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of*
    *Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther
  King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson Street
Carson City, NV 89701

22

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market Street
Trenton, NJ 08625

JOSHUA H. STEIN
  *Attorney General*
  *State of North Carolina*
P.O. Box 629
Raleigh, NC 27602

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street N.E.
Salem, OR 97301

MICHELLE A. HENRY
  *Attorney General*
  *Commonwealth of*
    *Pennsylvania*
Strawberry Sq., 16th Fl.
Harrisburg, PA 17120

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
  *Attorney General*
  *State of Vermont*
109 State St.
Montpelier, VT 05609

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
  *Attorney General*
  *State of Wisconsin*
17 W. Main St.
Madison, WI 53703

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, N.W., Suite 8100
Washington, D.C. 20001

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Ava Mortier, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 4,275 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Ava Mortier*