# 24-162-cr

United States Court of Appeals
For the Second Circuit
_____

Docket No. 24-162-cr
_____

UNITED STATES OF AMERICA,

Appellee,

-against-

KEITH VEREEN, a/k/a SEALED DEFENDANT 1,

Defendant,

STEVEN PEREZ, a/k/a SEALED DEFENDANT 2, a/k/a LUCHA,

Defendant-Appellant.
_____

APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**REPLY BRIEF FOR DEFENDANT-APPELLANT
STEVEN PEREZ**

Federal Defenders of New York, Inc.
 Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8731

*Attorney for Defendant-Appellant*
**STEVEN PEREZ**

**KENDRA L. HUTCHINSON**,
 *Of Counsel*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................i

TABLE OF AUTHORITIES ...................................................ii

INTRODUCTION ...................................................................1

ARGUMENT ...........................................................................2

I.    Both Counts Of Conviction Should Be Reversed And The Indictment Dismissed Because 18 U.S.C. § 922(a)(3) Violates *Bruen*. ...................................................................................2

    A.    *Decastro* Is Not Binding On This Court; In Any Event, It Does Not Hold That Interstate Firearm Acquisition Is Not Covered By The Second Amendment's Plain Text. ........................................................................................2

    B.    As Numerous Courts Have Held, The Second Amendment's Plain Text Protects Acquisition Of A Firearm. ....................................................................................8

    C.    The Government Has Not Proved A National Historical Tradition Of Prohibiting The Interstate Acquisition Of Firearms. ................................................................................14

CONCLUSION .....................................................................19

CERTIFICATE OF SERVICE ............................................20

CERTIFICATE OF COMPLIANCE ...................................21

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................... passim

*Doscher v. Sea Port Grp. Sec.*, 832 F.3d 372 (2d Cir. 2016) .................... 4

*Drummond v. Robinson Twp.,* 9 F.4th 217 (3d Cir. 2021) ...................... 9

*Ezell v. Chicago*, 651 F.3d 684 (7th Cir. 2011) ........................................ 9

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023)...................... 6, 7, 8, 9, 10

*Jackson v. City & County of San Francisco,*
   746 F.3d 953 (9th Cir. 2014)................................................................9

*Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020). 4, 6

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) ............................3

*Medunjanin v. United States*, 99 F.4th 129 (2d Cir. 2024) ......................4

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
   597 U.S. 1 (2022)............................................................................ passim

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) ... 9, 11, 15, 16

*United States v. Brown*, No. 5:23-CR-12-CAR-CHW,
   2024 WL 1773991 (M.D. Ga. Apr. 24, 2024) ...................................9, 11

*United States v. Decastro,* 682 F.3d 160 (2d Cir. 2012)................. passim

*United States v. Ogilvie,*
   No. 2:23-CR-00063-TC, 2024 WL 2804504 (D. Utah May 31, 2024) ....9

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) .................. 12, 13, 14, 15

**Statutes**

18 U.S.C. § 922(a)(1)(a) ...........................................................................17

18 U.S.C. § 922(a)(2)................................................................................17

18 U.S.C. § 922(a)(3).......................................................................... passim

18 U.S.C. § 922(d)(3) ...............................................................................17

18 U.S.C. § 922(g) ....................................................................................10

18 U.S.C. § 922(g)(8) ............................................................. 10

18 U.S.C. § 922(n) .................................................................... 9

**Constitutional Provisions**

U.S. Const. Amend II ...................................................... passim

**Other Authorities**

Saul Cornell & Nathan DeDino,
   *A Well Regulated Right: The Early American Origins of Gun Control*,
   73 Fordham L. Rev. 487 (2004) ......................................... 18

## INTRODUCTION

Lucha El, a New York resident, was convicted after trial of violating 18 U.S.C. § 922(a)(3), based on allegations that he acquired firearms that originated in South Carolina. On appeal, he argues that this conviction violates his Second Amendment rights under the test explicated in *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022).

The government opposes. But its arguments are meritless. The case upon which it relies, *United States v. Decastro,* 682 F.3d 160 (2d Cir. 2012), was abrogated by *Bruen*, and does not bind this panel. Moreover, numerous courts – including this one – have recognized that the right to acquire firearms is part and parcel of the right to keep and bear arms. Accordingly, the government is incorrect that the conduct criminalized by Section 922(a)(3) is not protected under the Second Amendment. Finally, the historical laws upon which the government relies – colonial prohibitions on sale of firearms, and gun powder storage laws – are not relevantly similar to Section 922(a)(3). Accordingly, reversal and dismissal of the indictment is required.

1

# ARGUMENT

### I. Both Counts Of Conviction Should Be Reversed And The Indictment Dismissed Because 18 U.S.C. § 922(a)(3) Violates *Bruen*.

The government advances three main arguments to defend the constitutionality of Section 922(a)(3). One is based on rigid adherence to now-abrogated precedent. The second results from a flawed understanding of the Second Amendment right at issue. And the third depends upon inapt analogies. Since the government cannot prevail, this Court should hold that Section 922(a)(3) violates the Second Amendment.

### A. *Decastro* Is Not Binding On This Court; In Any Event, It Does Not Hold That Interstate Firearm Acquisition Is Not Covered By The Second Amendment's Plain Text.

Just as it did before the district court, the government argues that this panel is bound to hold 18 U.S.C. § 922(a)(3) constitutional based on *United States v. Decastro*, 682 F.3d 160. Gov. Br. 13-15.[1] But the government is incorrect. *Bruen* – an intervening Supreme Court case –

---

[1] Appellant's opening brief is cited "App. Br." The government's responding brief is cited "Gov. Br."

casts serious doubt on *Decastro's* holding. Accordingly, this Court is not bound by it.

In *Decastro*, and as explained more fully in appellant's opening brief at pp. 17-18, the Court declined to apply heightened scrutiny to Section 922(a)(3) because, it reasoned, that statute did not "substantially burden" Second Amendment rights. *Decastro*, 682 F.3d at 164. The Court's analysis wholly depended upon the assumption that this test – *e.g.,* deciding the appropriate level of scrutiny based on the "burden" imposed on the constitutional right – was the appropriate methodology by which to evaluate Second Amendment claims. Given the developing state of the law at the time (shortly after *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010)), the Court's approach was understandable, and in harmony with other courts. *See id.* at 166 (citing and quoting other circuit court decisions utilizing same approach).

Subsequently, however, *Bruen* conclusively rejected this "means-end" methodology. The Supreme Court held that, although "the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end

3

scrutiny," "[t]oday, we decline to adopt that two-part approach." *Bruen*, 597 U.S. at 17; *see also id.* at 19 ("Despite the popularity of this two-step approach, it is one step too many."). In doing so, the Supreme Court explicitly abrogated *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 128 (2d Cir. 2020), in which, quoting *Decastro,* this Court explicated and applied the two-step framework. *Bruen*, 597 U.S. at 19 n.4.

*Bruen's* express refutation of the constitutional analysis upon which *Decastro* was premised qualifies as

> . . . an intervening Supreme Court decision [that] casts doubt on the prior ruling such that the Supreme Court's conclusion in a particular case broke the link on which we premised our prior decision or undermined an assumption of that decision.

*Medunjanin v. United States*, 99 F.4th 129, 135 (2d Cir. 2024) (quoting *Doscher v. Sea Port Grp. Sec.*, 832 F.3d 372, 378 (2d Cir. 2016) (cleaned up)). Accordingly, this Court is not bound by *Decastro's* holding that Section 922(a)(3) is constitutional, and it may consider the challenged statute anew, in light of *Bruen. Id.*

Nor does *Decastro* even stand for what the government proposes. The government contends that the case "did not accept—explicitly or

4

implicitly—that Section 922(a)(3) imposed *any* burden on Second Amendment rights . . . ." Gov. Br. 14 (emphasis in original). Yet the government concedes *Decastro* held that the statute "minimally affects the ability to acquire a firearm." *Id.* Even assuming that *Decastro's* now-abrogated utilization of the "burdening" framework corresponds to the *Bruen* step-one question of whether the Second Amendment's plain text "covers" the conduct, a "minimal" burden is *not* equivalent to "no" burden whatsoever.

The government also does not dispute that *Decastro* reserved decision on "whether certain firearm laws might regulate conduct that is *entirely unprotected* by the Second Amendment." *Decastro*, 682 F.3d at 165 n.3 (emphasis added). If the conduct regulated by Section 922(a)(3) was "entirely unprotected," as the government is arguing in Lucha El's appeal, the Court could not have made this observation in *Decastro*.

The government also argues, in essence, that *Decastro* should be followed in principle because its holding was based on the "first step of the since-abrogated two-step approach," and *Bruen* stated that this step is "broadly consistent" with *Heller*. Gov. Br. at 14. The government has

it backward. This Court has recognized that *Decastro's* holding –

heightened scrutiny does not apply to Section 922(a)(3) because it does

not impose a substantial burden on Second Amendment rights –

actually involves the *second* step, not the first. *Libertarian Party of Erie

Cty.*, 970 F.3d at 128 (quoting *Decastro* to define the "second step in the

Second Amendment analysis"). *Bruen* also makes this perfectly clear.

597 U.S. at 18 (in first step, court decides whether conduct is

"categorically unprotected"; in second step, court decides "how close the

law comes to the core of the Second Amendment right and the severity

of the law's burden on that right," to determine scrutiny level). It is this

second step – the one that *Decastro* analyzed – that the Supreme Court

instructs is "one step too many." *Bruen*, 597 U.S. at 19. *Decastro* thus

cannot be blindly followed.

Finally, the government's reliance on *Gazzola v. Hochul*, 88 F.4th

186 (2d Cir. 2023), *cert. denied*, No. 23-995, 2024 WL 3014531 (U.S.

June 17, 2024), decided after *Bruen*, is a red herring. *Gazzola* did not

even cite *Decastro*, let alone reaffirm its continued viability. The

challenged laws were state business regulations imposed on state

firearm dealers, not a federal criminal statute penalizing acquisition of

6

firearms. The Second Amendment analysis was attenuated: the dealers, asserting derivative standing, sought to prove irreparable injury by arguing that the onerous regulations would shutter their businesses, thereby leading to the deprivation of their customers' rights to acquire arms under the Second Amendment. Moreover, the *Gazzola* appeal concerned injunctive relief and did not result in a final disposition on the merits of the Second Amendment claim. The Court held that the record adduced by the plaintiffs before the district court failed to show that the businesses would "suffer the type of burden . . . required for a derivative claim to succeed" and thus they were "not entitled to preliminary injunctive relief." *Id.* at 195. Following this Court's decision, the lawsuit is ongoing in district court and now headed to trial. *See* Docket, *Gazzola v. Hochul*, No. 22-cv-01134-BKS-DJS (N.D.N.Y.). The ultimate outcome, after a full-blown evidentiary trial on the businesses' derivative Second Amendment claims, is unknown.

Finally and very importantly, in *Gazzola* the Court actually recognized, for the first time, that the right to acquire firearms implicates the Second Amendment, and that elimination of that right could be unconstitutional. *Gazzola*, 88 F.4th at 195-96 (holding that a

7

state cannot "circumvent" the Second Amendment right to possess arms by outright banning the right to acquire them; noting prior Second Circuit dicta suggesting this; and listing other circuits that had so held). Given the foregoing, *Gazzola* lends no support to the government's assertions about *Decastro's* post-*Bruen* prospects. In fact, to the extent that that case recognizes firearm acquisition as conduct covered by the Second Amendment, it supports Lucha El's position.

## B. As Numerous Courts Have Held, The Second Amendment's Plain Text Protects Acquisition Of A Firearm.

Lucha El argues that the plain text of the Second Amendment covers the conduct prohibited by Section 922(a)(3), *e.g.,* the acquisition of firearms. App. Br. 13-20. None of the government's arguments in response are persuasive.

At the outset, it is worth noting that the government does not directly dispute Lucha El's core contention that the Second Amendment protects the right to acquire and receive firearms. App. Br. 13-14. Nor would the government be on sound footing if it tried to do so. First, in the district court, the government itself "acknowledge[d] that receipt is a necessary precursor to possession for [the] ability to keep and bear arms in certain instances." 1A.108. Moreover, as noted above, this

8

Court has recently recognized that outright elimination of the right to acquire firearms would be unconstitutional. *Gazzola*, 88 F.4th at 195-96. Other circuits have held that the right to acquire arms is encompassed by the Second Amendment. *Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (*en banc*); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014); *Ezell v. Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). And district courts have near-unanimously found that receipt of firearms is protected in the context of 18 U.S.C. § 922(n). *See* App. Br. at 15-17 (collecting cases).[2]

The government does not address its concession or these cases. And it does not explain why the Court should not follow the clear weight of authority. Instead, it musters a grab bag of arguments. But none are persuasive, or even that relevant in the first place.

First, the government argues that Section 922(a)(3) "says nothing about a person's ability to possess a firearm for self-defense." Gov. Br.

---

[2] Since Lucha El filed the opening brief, other decisions have been issued. *United States v. Ogilvie*, No. 2:23-CR-00063-TC, 2024 WL 2804504, at *2 (D. Utah May 31, 2024); *United States v. Brown*, No. 5:23-CR-12-CAR-CHW, 2024 WL 1773991, at *3 (M.D. Ga. Apr. 24, 2024).

18. This is easily disposed-of. Lucha El agrees that unlike, for example, the status-based prohibitions found in 18 U.S.C. § 922(g), the statute at issue here does not contain the word "possession." However, as discussed more fully in the opening brief, possession is part and parcel of obtaining, acquiring, and receiving firearms. App. Br. 14-15. And, as discussed, courts too numerous to list yet again have held that acquisition is within the panoply of Second Amendment rights attendant to possession. The government has not attempted to distinguish these cases.

Second, relying again on *Decastro* (and other pre-*Bruen* cases), the government asserts that a person may still lawfully purchase firearms in-state even if they are prohibited from purchasing them out-of-state. Gov. Br. 18-19. The "de minimis burden" of purchasing or transferring one's guns in-state means Section 922(a)(3)'s prohibited interstate conduct does not qualify as protected, the government continues. Gov. Br. 19. This argument is puzzling and illogical: how can something that the government characterizes as a "burden" on firearm ownership not be conduct covered by the Second Amendment?

This argument also puts the cart before the horse. The government seems to be getting at the core issue of whether the restrictions are *permitted* under the Second Amendment, not whether the Second Amendment *governs* the analysis. But whether this type of acquisition criminalization scheme is consistent with the nation's historical tradition and, thus, constitutional, is the ultimate question that is solved at *Bruen's* second step. It is not, however, germane to the question at step one, which is whether the plain text of the Second Amendment covers "receiv[ing] in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that State." 18 U.S.C. § 922(a)(3). The simple answer to this question is "yes." "One cannot own a firearm without first receiving it." *Brown*, 2024 WL 1773991, at *3.

Third and finally, the government relies on language in *Heller* seemingly endorsing "conditions and qualifications on the commercial sale of firearms." Gov. Br. 19. It also points to language in *Bruen* suggesting approval of "shall-issue" licensing schemes, as well as statements concerning "law-abiding" "responsible" citizens' Second Amendment rights. *Id*. at 20-22. The government weaves these

11

statements into a larger principle that, it believes, this Court should adopt: that the Second Amendment categorically does not protect the right to "acquire [guns] without restriction," and categorically does not protect "illegally imported firearms" because law-abiding citizens purportedly would not typically possess them. *Id.* at 20, 21.[3]

Let it suffice to say that all of the *Bruen* and *Heller* language on which the government relies is dicta. *See also* App. Br. 19. This Court should not rely on such dicta in deciding Lucha El's appeal. Indeed, the Supreme Court has already made a point of rejecting the government's attempts to enshrine *Bruen/Heller* dicta into law. In *United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024), the government tried to graft a "law-abiding, responsible" citizen gloss onto the Second Amendment, arguing that the amendment only protected such people. In support, the government relied on the same *Bruen* language it relies on now. *See* Brief for the United States of America 6, 11, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023).

---

[3] Ironically, Lucha El was a "law-abiding" citizen. Prior to the instant case, he had no convictions.

The *Rahimi* majority turned down the government's invitation. *Rahimi*, 144 S. Ct. at 1903. Although it upheld the statute at issue (Section 922(g)(8)(C)(i)) on other grounds, the Supreme Court squarely rejected "the Government's contention that Rahimi [could] be disarmed simply because he is not 'responsible.'" *Id*. As the Court explained, the responsible/irresponsible "line" does not "derive from our case law," because *Heller* and *Bruen* "said nothing about the status of citizens who were not 'responsible.'" *Id*. That "question was simply not presented" in those cases. *Id*.

Moreover, Justice Gorsuch also took great pains to announce, in his *Rahimi* concurrence, that the Court did not "purport to approve in advance other laws denying firearms on a categorical basis to any group of persons a legislature happens to deem, as the government puts it, 'not 'responsible.''" *Rahimi,* 144 S. Ct. at 1909-10 (Gorsuch, J., concurring). Thus, *Rahimi* teaches an important lesson: the government relies on statements not necessary for the holdings of *Bruen* and *Heller* at its peril.

13

Accordingly, these arguments should not persuade the Court. At the most fundamental level, acquisition of a firearm is conduct protected by the Second Amendment.

### C. The Government Has Not Proved A National Historical Tradition Of Prohibiting The Interstate Acquisition Of Firearms.

Lucha El argues that the government failed to meet its burden to prove a national historical tradition of prohibiting the interstate acquisition or receipt of firearms. App. Br. 20-24. The government relies, again, on the two classes of colonial-era regulations it relied on below: (1) laws prohibiting the sale or transfer of firearms outside the colony, or to Native Americans; (2) laws regulating gun powder. Gov. Br. 22-27. But neither set of regulations is "relevantly similar" to Section 922(a)(3).[4]

*First*, two colonial prohibitions on the extra-territorial sale of firearms is far from a robust national historical tradition. Indeed, the

---

[4] Lucha El acknowledges that *Rahimi*, 144 S.Ct. at 1898, clarified that the appropriate test is whether a law is "relevantly similar," not "distinctly similar," as he had argued in the opening brief. App. Br. 21-22.

*Bruen* majority expressed skepticism and "doubt" that "three colonial regulations" were sufficient to make this showing. 597 U.S. at 46.

Perhaps more importantly, the Connecticut and Virginia sale bans cited by the government are not sufficiently analogous to Section 922(a)(3)'s blanket prohibition on an individual's receipt or acquisition of firearms that originate outside of the state. "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. Section 922(a)(3) says nothing about sale. Instead, it punishes the *purchaser/receiver*: any person who "transport[s] into" or "receive[s]" a firearm that was "purchased or otherwise obtained" out-of-state. Acquisition – not sale – is the vital underpinning of the right to possess arms. Accordingly, historical regulations on firearm sale do not speak to the "how and why" of Section 922(a)(3)'s prohibition.

In fact, the government's leading case, *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, recognizes just this. In *Teixeira*, much like in *Decastro*, the plaintiff state firearm dealers sued the state, alleging that regulatory ordinances burdened their right to sell and, also, their

15

customers' right to acquire firearms. Although the court granted the dealers standing to assert their customers' rights to acquire firearms, it differentiated the right of acquisition from the right to sell:

> [W]e conclude that the Second Amendment does not confer a freestanding right, wholly detached from any customer's ability to acquire firearms, upon a proprietor of a commercial establishment to sell firearms. Commerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense, but the right of gun users to acquire firearms legally is not coextensive with the right of a particular proprietor to sell them.

*Id.* at 682. The acquisition of firearms at issue in Lucha El's is, quite simply, not "coextensive" with the rights addressed by the regulations cited by the government.

The government's reliance on colonial laws prohibiting sale of firearms to Native Americans suffers from the same problem. Even if the odious roots of the laws can be disregarded, these regulations address sale, not an individual's right of acquisition. Even more, these laws – by criminalizing sale of firearms to prohibited "dangerous" persons, *see* Gov. Br. 25 – call up an entirely different regulatory purpose. The government takes too much of a 30,000-foot, birds-eye

view when it argues these regulations are "historical analogues" to Section 922(a)(3).

Notably, other Section 922 subsections do regulate and prohibit commercial sale activities that, arguably, could be considered more analogous to those in the regulations cited by the government. These include 18 U.S.C. § 922(a)(1)(a), prohibiting firearm trafficking; 18 U.S.C. § 922(a)(2), prohibiting licensed FFLs from shipping or transporting firearms to unlicensed persons; and 18 U.S.C. § 922(d)(3), criminalizing the sale of firearms to prohibited persons.

Perhaps in other Section 922 cases involving these subsections, the government will be able to prevail. But it cannot in Lucha El's specific case. That is because the trial evidence and conviction proved only that he received firearms but did not himself sell or transfer them.[5] As this Court has instructed, "[w]hen a defendant has already been convicted for specific conduct under the challenged law," the court "must "examine the complainant's conduct before analyzing other

---

[5] Co-defendant Keith Vereen, the straw purchaser, was charged with 18 U.S.C. § 922(a)(1)(A). 1A.19-21.

17

hypothetical applications." *Decastro*, 682 F.3d at 163, *abrogated on other grounds*, *Bruen*, 597 U.S. at 17.

*Second*, the government's reliance on colonial gun powder storage laws is, at the bottommost level, misplaced. If the purpose of Section 922(a)(3) is, as the government says, "preventing criminals from circumventing federal and state regulations on firearms purchases," it is not analogous to underpinning of the gun powder regulations. These laws' purpose was to prevent accidental fires and explosions. *See Heller*, 554 U.S. at 632 (explaining that "gunpowder storage laws" are "fire-safety laws"); Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 510–12 (2004) (explaining that the purpose of eighteenth and nineteenth century laws regulating the storage and transport of gun powder was to "protect communities from fire and explosion"). In a nutshell, gunpowder regulations addressed fire-related risks, not keeping guns from the hands of "criminals." Gun powder restrictions and Section 922(a)(3) are, therefore, not "relevantly similar."

In sum, the government has failed to prove there is a national historical tradition sufficiently akin to that prohibited by Section 922(a)(3).

## CONCLUSION

For the foregoing reasons and those set forth in the opening brief, Lucha El's conviction should be reversed and the indictment dismissed.

Dated:      New York, New York
            August 26, 2024


                        Respectfully submitted,


                        _____/s/_____
                        **KENDRA L. HUTCHINSON**

                        Federal Defenders of New York, Inc.
                         Appeals Bureau
                        52 Duane Street, 10th Floor
                        New York, NY 10007
                        (212) 417-8731
                        kendra_hutchinson@fd.org

                        *Counsel for Lucha El*

---

## CERTIFICATE OF SERVICE

I certify that I have caused a copy of this Brief to be filed with the Court's CM/ECF system, which will effect service on all counsel of record.

Dated:       New York, New York
             August 26, 2024

_____/s/_____
**KENDRA L. HUTCHINSON**
Assistant Federal Defender

## CERTIFICATE OF COMPLIANCE

1.  This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) and 32(e), and Local Rule 32(a)(4)(A) because:

> this Brief contains 3,276 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.  This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

> this Brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch in Century Schoolbook type style.

Dated:    New York, New York
          August 26, 2024


_____
            /s/
**KENDRA L. HUTCHINSON**
Assistant Federal Defender