**Federal Defenders**
OF NEW YORK, INC.

Appeals Bureau
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8742 Fax: (212) 571-0392

---

Tamara Giwa
*Executive Director*

Barry D. Leiwant
*Attorney-in-Charge*

November 22, 2024

Hon. Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   **United States v. Perez, No. 24-162-cr**
      Letter Brief Regarding *Antonyuk v. James*, Nos. 22-2908(L), 22-2972(Con),
      2023 WL 11963034 (2d Cir. Oct. 24, 2024)

Dear Ms. Wolfe:

Pursuant to the Court's Order of November 8, 2024, I write regarding the effect of *Antonyuk v. James*, Nos. 22-2908(L), 22-2972(Con) 2023, WL 11963034 (2d Cir. Oct. 24, 2024) (*Antonyuk II*) on this case. The short answer to this question is that, while *Antonyuk II* does not speak directly to the issues raised in the instant appeal, it lends indirect support to appellant's argument that the government cannot show a national historical tradition of relevantly similar firearm regulation to that embodied in 18 U.S.C. § 922(a)(3), a statute that prohibits conduct covered by the plain text of the Second Amendment.

In *Antonyuk II*, this Court considered the constitutionality of New York's post-*Bruen* gun licensing regime after remand from the Supreme Court, which had vacated *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ("*Antonyuk I*"), for further consideration following *United States v. Rahimi*, 144 S. Ct. 1889 (2024).

Hon. Catherine O'Hagan Wolfe -2- November 22, 2024

*Antonyuk II* concluded that *Rahimi* had "little direct bearing" on the issues presented by the case, as *Rahimi*, unlike *Antonyuk*, concerned "a criminal prohibition of firearms possession by a particular class of individuals based on a prior judicial adjudication." *Antonyuk II* at *2. However, the Court did conclude that *Rahimi's* "analysis of the considerations and methodology bearing on the constitutionality of the statute before it, and in particular its explication of the role of history in interpreting the Second Amendment, clarified to some degree the meaning and effect of" *Bruen*. *Id*.

Unlike in *Antonyuk*, *Rahimi* was decided during the pendency of the instant appeal. Accordingly, the import of *Rahimi* – including its "explication of the role of history in interpreting the Second Amendment," *id*. – has been addressed by the parties in this Court. *See* Gov. Br. 11-12, 26-27; Reply Br. 12-13, 14 n.4, 15.

Moreover, the *Antonyuk* litigation concerns constitutional challenges to the licensing schemes regulating individuals who wish to possess firearms, as well as restrictions on the locations in which they are permitted to carry such firearms. *Id*. By contrast, appellant's case concerns prohibitions on the right to *acquire* firearms in the first place, and the criminal sanctions imposed if those prohibitions are violated. In that way, the cases are dissimilar.

That said, however, *Antonyuk II* does reinforce an important claim advanced by appellant: that Supreme Court dicta may not be cobbled together in support of the government's attempt to criminalize conduct otherwise protected by the Second Amendment. In *Antonyuk II*, the government argued that the "character provision"

Hon. Catherine O'Hagan Wolfe          -3-          November 22, 2024

of the licensing scheme was lawful because it "impairs the ability to bear arms only of those individuals who *do not have Second Amendment rights* in the first place: the irresponsible." *Id*. at *24 (emphasis in original). The Court acknowledged that, in *Heller* and *Bruen,* the Supreme Court has "suggested that 'law-abiding,' 'responsible,' and/or 'ordinary' individuals are protected by the Second Amendment." *Id*. Nevertheless, it rejected the government's categorical argument, calling it, "at best, a controversial supposition." *Id*. In other words, the *Antonyuk II* Court refused the government's invitation to read those cases as endorsing the view that entire classes of people are wholly excluded from the Second Amendment's protections.

While tailored to the specifics of this appeal, in arguing that the historical tradition supports criminalizing out-of-state acquisition of firearms, the government here has relied on the same dicta from *Heller* and *Bruen* that it relied on in *Antonyuk*. Gov. Br. 19-21. It claims that § 922(a)(3) is designed to prevent the acquisition of firearms by those who are not "law-abiding" and "responsible," and, therefore, the conduct it criminally punishes is itself excluded from the ambit of the Second Amendment. *Id*.

This tautological argument, based on dicta, is meritless. As appellant pointed out in reply, *Rahimi* shot down "the Government's contention that Rahimi [could] be disarmed simply because he is not 'responsible.'" Reply Br. 13 (quoting *Rahimi,* 144 S. Ct. at 1903). *Rahimi* was clear: the responsible/irresponsible "line" does not "derive from our case law." *Id*. In *Antonyuk*, too, this argument now has been shot down. *Antonyuk*, 2023 WL 11963034 at *24. Accordingly, the government's attempt

Hon. Catherine O'Hagan Wolfe    -4-    November 22, 2024

to argue that the purported purpose of § 922(a)(3)'s criminal firearm regulation – its "why," *id.* at *15 – does not even *implicate* the Second Amendment, fails.

*Antonyuk* thus provides support for appellant's position. As Lucha El argues, the conduct prohibited by 18 U.S.C. § 922(a)(3) – out-of-state acquisition of firearms – is covered by the Second Amendment, and the government has failed to prove a relevantly similar national historical tradition of firearm regulation.

In sum, the statute is unconstitutional under the Second Amendment, both facially and as-applied. The judgment of conviction must be vacated, and the indictment dismissed.

Respectfully submitted,

/s/ Kendra Hutchinson

Kendra L. Hutchinson
Assistant Federal Defender
(212) 417-8731
kendra_hutchinson@fd.org

cc: Counsel for the government (via ACMS)

## CERTIFICATION OF COMPLIANCE

This letter brief complies with the Court's order of November 8, 2024, in that it contains 743 words.

Dated:    New York, New York
          November 22, 2024

_____/s/_____
Kendra L. Hutchinson
Assistant Federal Defender